UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHENZHEN HUAJING INTERNATIONAL TRADE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE GREASE BOX LLC, <br><br> Defendant. | CASE NO. 2:25-cv-01300-JNW <br><br> DISMISSAL ORDER |

## 1.   INTRODUCTION

This matter comes before the Court on Defendant The Grease Box LLC's motion to dismiss. Dkt. No. 10. Having reviewed the motion, Plaintiff Shenzhen Huajing International Trade Co., LTD.'s opposition, Dkt. No. 16, the reply, Dkt. No. 17, and all supporting materials, the Court GRANTS the motion.

## 2.   BACKGROUND

The Grease Box is an Arizona LLC that produces and sells grease receptacles for grills and smokers. Dkt. No. 1 ¶ 20. Its "GX-1 Side Mount" product is protected by U.S. Patent. No. 11,812,895 ("'895 Patent"), which lists Arizona-based inventors and an Arizona-based assignee. Dkt. No. 1 ¶¶ 5–7; Dkt. No. 1-1. All The Grease

DISMISSAL ORDER - 1

Box's members and employees reside outside of Washington—the majority owners reside in Arizona. Dkt. No. 10-1 ¶ 12.

Plaintiff Huajing, a Chinese company, also sells "grease buckets for use with outdoor cooking devices" and "sells such products in the United States through its Amazon storefront" under the "VattaFrast" brand. Dkt. No. 1 ¶ 5.

The Grease Box "became aware" of "copycat" GX-1 Side Mounts for sale on Amazon.com by a number of sellers, including Huajing. Dkt. No. 10-1 ¶ 8. The Grease Box filed a complaint with Amazon through its Patent Evaluation Express ("APEX")[1] program, alleging that these sellers and copycat products infringed on the '895 Patent. Dkt. No. 1 ¶ 18. Huajing did not participate in the APEX process. Dkt. No. 1 ¶¶ 17–18; Dkt. No. 10-1 ¶ 10. This resulted in the removal of Huajing's product from the Amazon marketplace. Dkt. No. 1 ¶ 18.

Huajing then sued The Grease Box in this district, seeking (1) a declaration that it had not infringed the '895 Patent, (2) damages under Washington's Patent Troll Prevention Act ("PTPA"), RCW 19.350 et seq., and Consumer Protection Act, RCW 19.86 et seq., and (3) alleging tortious interference with business relationships. *See generally*, Dkt. No. 1.

---

[1] Amazon offers the APEX program to "owners of United States utility patents to obtain an evaluation of their patent infringement claims against products offered by third-party sellers on amazon.com." Dkt. No. 1-2. *See also, Jiujiang Xiangmojin Trading Co. v. Interlink Prods. Int'l Inc.*, No. 2:24-CV-02034-LK, 2025 WL 2966307, at *1 n.1 (W.D. Wash. Oct. 21, 2025)

DISMISSAL ORDER - 2

The Grease Box now moves to dismiss, or, in the alternative, to transfer the complaint for lack of personal jurisdiction, improper venue, and forum non conveniens. Dkt. No. 10.

### 3.  DISCUSSION

**3.1  The Court lacks personal jurisdiction over The Grease Box.**

"Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *Cox v. Gritman Med. Ctr.*, No. 24-1947, --- F.4th ---, 2026 WL 378500, at *2 (9th Cir. Feb. 11, 2026). Because Washington's long-arm statute is coextensive with federal due process, the Court need only determine whether exercising jurisdiction comports with due process. *Id.* at *4.

Personal jurisdiction may be general or specific. General jurisdiction exists only where a defendant is "essentially at home," typically its state of incorporation or principal place of business. *Ford Motor Co. v. Montana Eighth Jud. District Court*, 592 U.S. 351, 358–59 (2021). Specific jurisdiction, by contrast, depends on the defendant's forum-related activities and their relationship to the claims at issue. *Id.* at 359.

The Complaint does not—and could not—allege general jurisdiction. The Grease Box is "at home" in Arizona, not Washington. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); Dkt. No. 10-1 ¶¶ 2, 11–13. The question is thus whether specific jurisdiction exists.

Whether specific jurisdiction exists for Huajing's declaratory judgment claim for patent noninfringement is governed by Federal Circuit law, because "the jurisdictional issue is intimately involved with the substance of the patent laws." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)). Under the Federal Circuit's framework, the courts ask: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx*, 848 F.3d at 1353 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). In the declaratory judgment context, the minimum contacts prong "requires some enforcement activity in the forum state by the patentee." *Maxchief Invs. Ltd. v. Wok & Pan Indus., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018).

Huajing's remaining claims sound in intentional tort and are governed by the Ninth Circuit's *Calder* effects test, which requires that "the defendant have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004) (quoting *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)).

Both frameworks turn on whether The Grease Box purposefully directed its conduct at Washington. Because the analysis converges and reaches the same result under either test, the Court addresses the claims together.

### 3.1.1 The Grease Box did not expressly aim its conduct at Washington.

Plaintiff's theory of jurisdiction rests on The Grease Box's submission of an APEX complaint to Amazon, which is headquartered in Seattle. *See* Dkt. No. 1 ¶ 12. Plaintiff contends that because the complaint was directed to a Washington-based company, and because its Amazon listings constituted a "Washington-based storefront," the enforcement activity was purposefully directed at this forum. *Id.* ¶¶ 12, 44. The Court disagrees.

Beginning with the declaratory judgment claim, the Federal Circuit has squarely addressed how APEX complaints factor into the purposeful-direction analysis. In *SnapPower v. Lighting Defense Group*, 100 F.4th 1371 (Fed. Cir. 2024), a patent owner submitted an APEX complaint to Amazon in Washington, triggering removal of the accused infringer's listings. The district court dismissed for lack of personal jurisdiction in Utah—the accused infringer's home state—reasoning that the APEX complaint was directed at Amazon in Washington rather than at the infringer. *Id.* at 1374. The Federal Circuit reversed, holding that the patent owner "purposefully directed its activities at [the accused infringer] in Utah, intending effects which would be felt in Utah." *Id.* at 1375. The court emphasized that an APEX complaint goes beyond a cease-and-desist letter because it "initiated a process that, if [the accused infringer] took no action, would result in [its] listings being removed from Amazon.com, necessarily affecting sales activities in [the forum state]." *Id.* at 1378.

*SnapPower* thus establishes that an APEX complaint constitutes purposeful direction, but at the accused infringer's home, not at the location of the intermediary platform. Applied here, that reasoning points away from Washington. The Grease Box's APEX complaint was aimed at Huajing's sales activity, and Huajing is based in Shenzhen, China—not in Washington. That the complaint was routed through Amazon's Washington headquarters does not convert it into Washington-directed conduct, any more than it converted the complaint in *SnapPower* into Washington-directed conduct. *Id.* at 1374–75.

The Ninth Circuit's framework for the tort claims yields the same result. Under the *Calder* effects test, the "express aiming" requirement asks whether the defendant's conduct was aimed at the forum itself, not merely at a third party located there. *See Walden v. Fiore*, 571 U.S. 277, 285–86 (2014); *Schwarzenegger*, 374 F.3d at 806–807; *see also Werner v. Dowlatsingh*, 818 F. App'x 671, 673 n.1 (9th Cir. 2020) (uploading to YouTube "is not an act expressly aimed at California simply because the company is based in the state."). The APEX complaint was not "expressly aimed" at Washington under this framework any more than it constituted "purposeful direction" at Washington under the Federal Circuit's test.

This conclusion is reinforced by Judge King's analysis in *Jiujiang Xiangmojin Trading Co. v. Interlink Products Int'l, Inc.*, No. 2:24-cv-02034-LK, 2025 WL 2966307, at *4 (W.D. Wash. Oct. 21, 2025), which found, on materially similar facts, that the defendants' use of the APEX program was "likewise not a meaningful contact with this District." Borrowing the Tenth Circuit's metaphor from *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008), the

APEX complaint is a "bank shot"—aimed at the plaintiff's sales, not at Amazon's operations in Washington.

Plaintiff also points to the APEX Agreement's forum selection clause. Dkt. No. 1 ¶ 13. But Huajing did not sign the APEX Agreement, Dkt. No. 16 at 10, and a forum selection clause cannot bind a non-signatory. *Jiujiang*, 2025 WL 2966307, at *2.

Plaintiff's PTPA and CPA claims do not alter this conclusion. Those claims arise from the same underlying conduct—the APEX complaint—and they fail under the Ninth Circuit's *Calder* framework for the same reason the declaratory judgment claim fails under the Federal Circuit's: The Grease Box's enforcement activity was not expressly aimed at Washington. The jurisdictional analysis turns on the defendant's contacts with the forum, not the plaintiff's choice of legal theory. The Court concludes that Plaintiff has not carried its burden of establishing specific personal jurisdiction over The Grease Box.[2]

---

[2] The Court acknowledges that it previously found personal jurisdiction on related facts in *Zero Cloud One Intelligent Technology (Hangzhou) Co. Ltd. v. Flying Heliball LLC*, No. 2:24-cv-01699-JNW, 2024 WL 4665594 (W.D. Wash. Nov. 4, 2024). That ruling, however, was made on a TRO motion under a "reasonable probability" standard—not as a binding jurisdictional determination. *Id*. at *4 n.1, *5 n.4. It also rested on materially different facts—the defendants in *Zero Cloud* had sent demand letters, filed a parallel infringement action, and explicitly threatened to disrupt the plaintiff's "minimal channels of trade" before submitting their takedown notice. *Id*. at *1–3. The APEX complaint there was one component of a broader enforcement campaign. Here, The Grease Box's only alleged contact with Huajing's commercial activity is the APEX complaint itself.

DISMISSAL ORDER - 7

**3.2     Venue in this jurisdiction is improper.**

Even if personal jurisdiction existed, venue would be improper. Under 28 U.S.C. § 1391(b), a federal civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff alleges that venue is proper in this district under the second prong. Dkt. No. 1 ¶ 14. Specifically, Plaintiff claims that "Defendant's wrongful prosecution of the APEX complaint through Amazon, headquartered in Seattle, directly caused the harm at issue." *Id.* For the reasons discussed above and below, the Court does not agree that routing an APEX complaint through Amazon constitutes a "substantial part of the events" occurring in this District.

"Substantiality is measured by considering the nexus between the events and the nature of the claims; that is, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Lee v. Corr. Corp. of Am.*, 252 F. Supp. 2d 1238, 1241 (D. Haw. 2007) (cleaned up); *see also Myers v. Bennet Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (in a tort action, "the locus of the injury [is] a relevant factor" in determining substantiality.) Here, the relevant activities involved in the underlying controversy took place in either China or Arizona. Dkt. No. 1 ¶¶ 5–6. The '895 Patent appears to have been designed and developed in

Arizona, by Arizonan inventors, and belongs to an Arizonan company. *See* Dkt. No. 1-1 (listing applicant, inventors, and assignee of the '895 Patent as Arizonan residents or companies). Plaintiff is a Chinese company who alleges that Defendant's patent infringement claim caused harm to its "Amazon-based sales," with the virtual storefront being its "primary sales channel into the U.S. market." Dkt. No. 1 ¶¶ 44, 48. "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Indeed, the *only* connection to this forum is through the Amazon APEX program, which was merely the mechanism by which Defendant sought to enforce its patent. The APEX program alone is insufficient to constitute a significant event or omission necessary for venue. *See, e.g.*, *Jiujiang*, 2025 WL 2966307, at *5. Accordingly, the Court finds that venue is improper under 28 U.S.C. § 1391(b).

**3.3   Dismissal, rather than transfer, is appropriate.**

When venue is improper, the district court has the discretion to either dismiss the case or transfer it "in the interest of justice." *See* 28 U.S.C. § 1406(a). "In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper." *Ctr. for Biological Diversity v. Pirzadeh*, No. C09-1719-JCC, 2010 WL 11691840, at *5 (W.D. Wash. Apr. 28, 2010) (quoting *Multimin*

*USA, Inc. v. Walco Int'l, Inc.*, No. CV F 06-0226 AWI SMS, 2006 WL 1046964, at *8 (E.D. Cal. Apr. 11, 2006)) (citing cases).

The Court finds that the interests of justice favor dismissal of Plaintiff's case rather than transfer. As discussed above, Plaintiff's choice of Washington venue was clearly improper. Nor at any point in its briefing does Plaintiff request or show interest in transferring its case to an appropriate venue—i.e., the District of Arizona—as an alternative to dismissal. The Court concludes that justice would not be served by transferring Plaintiff's claim to a jurisdiction which it intended to avoid. *See Wood v. Santa Barbara Chamber of Com.*, 705 F.2d 1515, 1523 (9th Cir. 1983), *cert. denied*, 465 U.S. 1081 (1984). Therefore, Defendant's motion is GRANTED and Plaintiff's complaint is DISMISSED.

## 4.  CONCLUSION

Plaintiff fails to show that a substantial part of the events or omissions giving rise to its claim occurred in Washington. The Court does not find it in the interests of justice to transfer the case in lieu of dismissal. Accordingly, the Motion is GRANTED and the Complaint is DISMISSED without prejudice to refile in an appropriate venue.

Dated this 23 day of February, 2026.

Jamal N. Whitehead
United States District Judge